## CHARLES F. GERARD
## v.
## ERASTUS W. BATES.

*Partnership—Bill of Mortgagee of a Partner's Interest for an Accounting—Judgments—Estoppel—Rent.*

Upon a bill for an accounting and other relief, filed by the mortgagee of a partner's interest in a livery and stock business, who also held by purchase certain judgments under which a levy had been made on certain interests, it is *held:* That the complainant is entitled to share in the entire assets subject to the debts of the firm, although the executions were not levied on all of the firm's property; that the appellant, who was one of the partners, is estopped from setting up a certain contingent claim against the interest in question, because of representations made by him as to the value of such interest at the time of the complainant's purchase; and that the complainant is not chargeable with rent for the stable pending this litigation.

[Opinion filed November 18, 1887.]

APPEAL from the Circuit Court of Logan County; the Hon. GEORGE W. HERDMAN, Judge, presiding.

Messrs. BEACH & HODNETT, for appellant.

Messrs. E. Lynch and Blinn & Hoblit, for appellee.

Pleasants, J.   On the 21st of April, 1885, Gerard and Wert
were partners in a livery and stock business at Lincoln, under
the firm name of Wert & Company, with the proportions in
interest of three-fourths and one-fourth, respectively.   On that
day Gerard, in consideration of a certain half section of land
in Nebraska, taken at an agreed valuation of $3,200, conveyed
to Danley two-thirds of his interest therein, being one-half of
the whole, by a bill of sale specifying the items of such stock
and containing an express warranty of title; and by agree-
ment of the parties Danley became a member of the firm,
with that proportion of interest therein.   The co-partnership
so formed continued until the 18th of June next following,
when it was dissolved by sale of Danley's interest, under exe-
cutions for $769.91 in favor of Harts.   Appellee, holding an
unrecorded mortgage for $600 on the same interest, talked
with appellant about the advisability of his taking an assign-
ment of the Harts judgments, and purchasing at the execution
sale to protect his mortgage debt.   He testified that appellant
advised him to buy, assuring him that Danley's interest would
be good to him for $1,400, at the least, and in this was cor-
roborated by Frank Hoblitt, cashier of the First National
Bank of Lincoln.   He accordingly made the purchases, pay-
ing about $750.

At the time of the exchange of land for livery stock above
mentioned, Gerard and Danley entered into another agreement
under seal, whereby, after reciting said exchange, and that
Gerard agreed to pay him, besides, the sum of $200, and
assumed to pay a debt of $576, secured by said land, said
Danley guaranteed that the cash value of said land should
be $3,200, within eighteen months from that date, and if
not, that he would then pay the deficiency " out of the
livery stock of Wert & Company at such a value as the dif-
ferent articles may, by the partners composing the firm of
Wert & Company, be appraised."   It further provided that
Wert and Gerard should be entitled to all moneys due to Wert
& Company, and that Gerard should be responsible for all
indebtedness of said firm, to that date.

According to the Sheriff's return the Harts executions were levied upon Danley's interest in the specific articles of property therein mentioned, embracing all of the firm stock that could be found; but there were two horses and some hay, oats and corn in possession or under control of said Gerard which were not mentioned in said return.

After his purchase at the execution sale, appellee claimed absolute ownership of an undivided half interest in the firm stock, subject, of course, like the other half, to firm debts. Appellant claimed that the interest of Danley so purchased was not one-half of the firm stock absolutely or subject only to firm debts, but was contingent upon what should prove to be the value of the Nebraska land eighteen months from April 21, 1885, and refused to account with appellee upon the basis claimed by him. Thereupon appellee filed the bill herein to the September term, 1885, against Gerard and Wert, stating his claim, charging their refusal to recognize them, and praying for an accounting and for a receiver, and for general relief. Answer and replication thereto were filed, the cause was referred to the master and proof was taken and reported. The outcome was that a receiver was appointed, who, under the direction of the court, made sales, collections and payments, and reported the same in substance as follows:

Total amount of sales of firm stock................$1,909.04
Collections made on book accounts of firm..........   279.45
Cash received at stable............................    23.85

                                                   $2,212.34
Amount paid out.......................$108.57
Receiver's commissions................. 132.74   $ 241.31

Balance on hand....................................$1,971.03

Further testimony was taken and the account stated by the master, which added to the receiver's statement the following items: the firm was credited, for feed sold by Gerard, with $70, making a total of $2,041.04, and debited with claims allowed to Isaac Wert, $64.87, to Gerard for rent of stable, $89.60, and for repair bill, $91.01, and to Gas & Electric Light

Company, $14.85; in all $260.33, reducing the lalance to $1,780.70, of which one-fourth, each, was decreed to be paid to Gerard and Wert and one-half to Bates; and all the costs were adjudged against the defendants. From this decree Gerard alone appealed.

He claims that the court erred in two particulars: one in that the decree allows Bates a half of the $70 received from the sale of feed by Gerard and of collections on the firm books, notwithstanding the executions were not levied upon the feed or book account; and the other, in that it ignored appellant's claim against Danley's interest in the event that the value of the Nebraska land should fail to be of the value of $3,200, by the time in that behalf limited.

These objections seem to be of no force. The feed and accounts belonged to the firm, and were liable for its debts. Those debts were paid, and of all the remaining assets, appellant got his full one-fourth. What more can he justly claim, or how is he injured, by applying on firm debts the proceeds of this feed and the book accounts, rather than the proceeds of the property levied on? If appellee received more than he was entitled to, the injury is done to Danley. Appellant, having received his full share of the assets, can not be heard to complain for Danley, but Danley was not wronged. Gerard and Wert, as well as Bates, understood that his entire interest in the firm assets was divested by the execution sale. Hence it was, probably, that he was not made a party to the bill, and that appellant interposed no objection to it on that ground. In the settlement, or partition between him and Wert of the feed referred to, the extinguishment of Danley's interest, and the succession of Bates thereto, were distinctly recognized. Wert testified that they put the whole at $70, and he sold a half interest therein to Gerard for $35, but with the express understanding that "if Bates claimed it, he (Wert) was to pay back so much."

An elaborate argument, referring to many authorities, is submitted by counsel to show that claims of Danley's individual creditors against his interest in firm assets, would be postponed to that of appellant arising on the guarantee of the

value of the Nebraska land. We deem it unnecessary, how-ever, to discuss the rights of appellant, or other individual creditors of Danley as against him, or as between themselves, since we apprehend that the case of appellee stands on an-other ground, and that as against him, appellant is estopped to urge his supposed claim.

He well knew that appellee's attention was drawn to the Harts judgments by the peril of his mortgage debt, and that its protection was the sole motive for their purchase; and although he told appellee that he had a contingent claim upon Danley's interest, he declined to give him any particular in-formation, or show him the papers, and distinctly advised him to make the purchase. The evidence on that subject warrants the conclusion that he assured him there was in it for him (Bates) at least a value of $1,400, which he knew was about the amount of the mortgage and these judgments. He denies such assurance in terms, but admits that he told appellee he was safe; and though this was in its nature matter of opinion, he did not state it merely as such, nor disclose the facts in his possession, which would have enabled appellee to estimate its weight, or exercise his own judgment at his own risk. It would be unjust for him now, upon the strength of the facts thus withheld, to subject appellee to the loss of his mortgage debt and all he paid, upon his advice, to protect it.

In the reply brief counsel claim for the first time that appellant should have been allowed for rent of the stable dur-ing the pendency of this litigation. It was allowed for the time occupied by the firm of which Danley was a member. But appellee never rented the premises. Immediately upon acquiring Danley's interest he sought to get it out of the stable by an accounting and settlement, which appellant refused. He was never a tenant and owed no rent. On the whole, we think appellant has no cause to complain of the decree.

*Decree affirmed.*